SUPERIOR COURT
of the
STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302) 735-2111


Mr. Frederick S. Freibott, Esquire
The Freibott Law Firm, P.A.
1711 East Newport Pike
P.O. Box 6168
Wilmington, DE 19804

Ms. Miranda Clifton, Esquire
Heckler & Frabizzio, P.A.
800 Delaware Avenue, Suite 200
P.O. Box 128
Wilmington, DE 19899

Mr. Matthew E. O'Byrne, Esquire
Casarino Christman Shalk
Ransom & Doss, P.A.
1000 North West Street
P.O. Box 1276
Wilmington, DE 19899


Submitted: June 3, 2026
Decided:　July 8, 2026

**RE:　*Simmons v. Poore et al.*,**
**　　C.A. No. K22C-01-014 JJC**


Counsel:

　　This letter resolves several post-trial motions following a three-day jury trial examining a three-vehicle collision and injuries allegedly suffered by Plaintiffs Jerome and Giesela Simmons. One of the drivers, Defendant Brandon Fansler, settled with Mr. and Ms. Simmons before trial in exchange for a joint tortfeasor release. After trial, the jury returned a verdict (1) finding that Defendants Anthony

Poore and Brandon Fansler were joint tortfeasors who proximately caused the accident, (2) apportioning 60 percent fault for the accident to Mr. Poore and 40 percent to Mr. Fansler, and (3) finding $350,000 in total compensatory damages due Mr. Simmons. The Court then entered judgment in favor of Mr. Simmons and against Mr. Poore in the amount of $210,000.

Presently, Mr. Simmons seeks costs under Superior Court Civil Rule 54 and prejudgment interest under 6 *Del. C.* § 2301(d). Mr. Poore opposes both motions, in large part, because he seeks remittitur or, in the alternative, a new trial. He also opposes some of the claimed costs and contends that the accumulation of prejudgment interest should be suspended for approximately six months due to a trial delay caused by Mr. Simmons.

Regarding Mr. Poore's motion for remittitur/new trial, he contends that no reasonable jury could have found that he bore more responsibility for the accident than Mr. Fansler. Mr. Poore also contends that a new trial to apportion fault is appropriate because Mr. Fansler—who is a codefendant against whom he had a cross-claim—actively participated in the trial after he settled with Mr. and Mrs. Simmons. He contends that Mr. Fansler's questions and argument unfairly prejudiced him because he was "double-teamed."

Mr. Simmons, for his part, counters that apportionment of fault between the two was a jury question. He emphasizes video footage provided to the jury that showed Mr. Poore running his stop sign before striking Mr. Fansler's vehicle. Mr. Simmons also emphasizes that (1) Mr. Poore filed the crossclaim against Mr. Fansler, (2) Mr. Fansler chose to participate in the trial notwithstanding receipt of a joint-tortfeasor release, and (3) Mr. Poore did not object to Mr. Fansler's participation because of his own fear regarding an empty chair. Accordingly, Mr. Simmons contends that the result at trial should not be disturbed and that he should be awarded costs and interest.

2

## FACTS AND PROCEDURAL BACKGROUND

This case arose from a three-way car accident at a four-way intersection near Felton. While Mr. Simmons sat stopped at the intersection, Mr. Poore and Mr. Fansler's vehicles collided in the intersection. The collision pushed Mr. Fansler's vehicle into Mr. Simmons' truck as he remained stopped at his stop sign. Mr. Simmons' medical expert testified that he suffered significant injury to his neck as a result of the collision, which required two cervical surgeries.

Mr. and Mrs. Simmons sued Mr. Poore and Mr. Fansler seeking damages for personal injury and loss of consortium.[1] Both defendants denied liability and filed crossclaims for contribution against one another. The primary allegations against both were that they ran their stop signs before striking one another in the intersection. Before trial, Mr. and Mrs. Simmons settled their claims against Mr. Fansler pursuant to a joint tortfeasor release and dismissed their claims against him with prejudice.[2]

Despite the settlement, Mr. Poore declined to consent to Mr. Fansler's dismissal because preservation of Mr. Poore's crossclaim was necessary for Mr. Poore to benefit from a potential reduction in liability given Mr. Fansler's release by Mr. and Mrs. Simmons.[3] As a result, the remaining parties in interest—the plaintiffs and Mr. Poore—discussed how to handle Mr. Fansler at trial. They *both* expressed concern about the effect of an empty chair on their respective cases. In any event, prior to trial, Mr. Poore did not object to Mr. Fansler's active participation at trial. Mr. Fansler, for his part, represented his willingness to participate in the trial even

---

[1] D.I. 1 at ¶¶ 8–9, 10–11, 12–13.
[2] D.I. 88 (Stipulation of Partial Dismissal); D.I. 67, Ex. A (Settlement Agreement).
[3] D.I. 88 at 1 ("This stipulation of partial dismissal preserves Defendant Anthony Poore['s] cross claims against Defendant Brandon Fansler.").

though he need not have because "he bought himself peace" through a joint tortfeasor release.[4]

At trial, both defendants disputed their liability and pointed their fingers at one another. Mr. and Mrs. Simmons focused primarily on Mr. Poore's liability while also advocating that Mr. Fansler contributed to the accident by running his stop sign. Trial evidence implicating Mr. Fansler included his acknowledgement that he had paid a voluntary assessment for running a stop sign. Mr. Simmons also testified that Mr. Fansler failed to stop. Mr. Fansler, however, testified that he had stopped at the intersection and that he paid the ticket merely out of convenience. In other words, Mr. Fansler placed the blame for the collision primarily on Mr. Poore.

Further trial evidence included dashcam video from Mr. Simmons' vehicle. The parties repeatedly played it for the jury and Mr. Poore used it to produce still shots of the moments before the collision. First, the video excluded Mr. Fansler's truck from view until the moment of impact. In other words, it did not show whether he ran his stop sign. Second, the video showed Mr. Poore approaching his stop sign, rolling through it, and then entering the intersection without stopping. Third, the video showed Mr. Poore's vehicle hit Mr. Fansler's vehicle broadside in the intersection which pushed Mr. Fansler's vehicle into Mr. Simmons' vehicle.

The jury, through special interrogatories, found both defendants liable—with 60 percentage fault apportioned to Mr. Poore and 40 percent to Mr. Fansler.[5] As to damages, the jury found $350,000 in total compensation due Mr. Simmons and none

---

[4] *See Roca v. Riley*, 2008 WL 1724259, at *3 (Del. Super. Apr. 10, 2008) (recognizing that, absent an admission, for the remaining co-defendant to concomitantly benefit from a joint tortfeasor release, a judicial finding by the trier of fact is necessary and "[w]hile most third-party defendants who have executed a release with plaintiffs in similar circumstances do not generally appear at trial so as to avoid additional expense, the Court leaves that choice to [the released third-party defendant.]").

[5] D.I. 103 (Verdict Form) at 2.

4

due Ms. Simmons for loss of consortium.[6] As a result, the Court entered judgment against Mr. Poore in the amount of $210,000.[7] The discussion to follow addresses the parties' respective post-trial motions.

## MR. POORE'S MOTION FOR REMITTITUR OR NEW TRIAL

Mr. Poore moves for remittitur or, in the alternative, a new trial. He does not challenge the sufficiency of the evidence to support the $350,000 verdict, however. Rather, he focuses on the jury's finding regarding his relative percentage of fault. In doing so, he concedes that the record contains sufficient evidence for a jury to find him partially at fault, but he contends that no reasonable jury could have found him to be greater than 50% at fault.[8] Accordingly, he requests either a Court-directed downward adjustment in the judgment amount—via a reduced percentage of fault—or a new trial on the issue of relative fault.

At the outset, a motion seeking remittitur is an inappropriate mechanism to challenge a jury's finding regarding Mr. Poore's proportional share of fault. As the Delaware Supreme Court explained in *Ford Motor Company v. Knecht, et al.*:

> [t]he rule [governing remittitur should be] applied against the jury's compensatory damages verdict, not [the defendant's] lesser share of those damages based on its percentage of fault. A tortfeasor's percentage of fault is not relevant in deciding whether a verdict is excessive. The inquiry [when seeking remittitur] must focus on the amount of the plaintiff's damages as determined by the jury.[9]

Here, Mr. Poore advocates the same approach as that rejected by the Supreme Court in *Ford Motor Company*. Remittitur properly focuses only on the jury's total finding of damages. The mechanism does not permit the Court to decrease a judgment amount against one joint tortfeasor by downwardly adjusting assigned

---

[6] *Id.*

[7] D.I. 110.

[8] D.I. 117 ¶ 9.

[9] (*In re Asbestos Litig.*), 223 A.3d 432, 434 (Del. 2019).

5

fault. Again, Mr. Poore's motion for remittitur is the incorrect mechanism to address his contentions.

Rule 59, however, does provide a mechanism to consider the sufficiency of the evidence to support the jury's apportionment of liability. When considering a Rule 59 motion, the Court "weighs the evidence in order to determine if the verdict is one which a reasonably prudent jury would have reached."[10] The Court may set aside a jury verdict under Rule 59 if it was "manifestly and palpably against the weight of the evidence, or for some reason, justice would miscarry if the verdict were allowed to stand."[11] The standard has been separately described as questioning whether the verdict was contrary to the overwhelming weight of the evidence.[12] As the Delaware Supreme Court has explained, this standard protects the province of the jury to decide issues of fact as guaranteed by the Delaware Constitution.[13] On the other hand, it protects a party from an aberrant jury award by permitting a new trial before another jury.

Mr. Poore raises two grounds in support of a new trial. First, he contends that no reasonable jury could have found him more liable than Mr. Fansler for the collision. That ground challenges the sufficiency of the evidence to support the apportionment. Second, he contends that Mr. Fansler's participation in the trial resulted in a "double-team" against him where Mr. Fansler and his counsel inappropriately joined forces with Mr. Simmons. Under Rule 59, the latter distills to the question of whether Mr. Fansler's participation in the trial enabled a miscarriage of justice.

---

[10] *Burgos v. Hickok*, 695 A.2d 1141, 1145 (Del. 1997).
[11] *Id.*
[12] *Dunn v. Riley*, 864 A.2d 905, 906 (Del. 2004).
[13] *Id.*; *see also* Del. Const. art. IV § 11(1)(a) ("... on appeal from a verdict of a jury, the finding of the jury, if supported by the evidence, shall be conclusive.").

As to the weight of the evidence, the jury's verdict is entitled to substantial deference when determining the parties' respective percentages of fault. In fact, "the determination of respective degrees of negligence attributable to the parties *almost always presents a question of fact for the jury*."[14] Here, Mr. Poore does not contest the sufficiency of the evidence to support a jury finding that he contributed to the accident. Rather, he contends the jury went too far when assessing his percentage of fault at 60 percent.

In this case, Mr. Poore urges the Court to invade the province of the jury where there was sufficient evidence to support its finding. Namely, the jury saw dashcam video that showed Mr. Poore entering the intersection without stopping. In contrast, Mr. Fansler's vehicle was outside the camera's view. Furthermore, Mr. Fansler testified that he had in fact stopped at his stop sign and explained that he paid the citation for reasons of convenience. Regardless of the weight the jury assigned that testimony, the video provided sufficient evidence alone for a jury to find that Mr. Poore was primarily responsible for the accident.

Granted, there is a possibility that the video's frame rate could have created a gap or gaps that made it only appear that Mr. Poore failed to stop. No party objected to the admission of the video into evidence or its repeated publishing, however. Nor did any party offer evidence regarding the frame rate of the video or why the video could have been misleading.[15] On this record, the jury was free to place controlling weight on the dashcam video. Its finding was not contrary to the overwhelming weight of the evidence.

---

[14] *Helm v. 206 Mass. Avenue, LLC,* 107 A.3d 1074, 1081 (Del. 2014) (emphasis in original).
[15] Mr. Poore argued this in closing, however, through use of still shots taken from the video – *without* the support of an expert opinion that the video's frame rate produced gaps that could have misleadingly shown Mr. Poore's failure to stop.

7

Turning to Mr. Fansler's participation, the tension between Mr. Fansler and Mr. Poore became galvanized because of *Mr. Poore's* crossclaim. For a *pro rata* allocation of fault, a jury decision was necessary (1) to determine whether the parties were joint tortfeasors, and (2) to allocate fault by percentage between the two. Admittedly, Mr. Fansler could have pressed his rights and forgone active participation in the trial after he secured the release. Third-party or released co-defendants frequently do that to avoid trial expenses. But, again, that was Mr. Fansler's decision, and he did nothing untoward when advocating that an increased percentage of fault be assigned to Mr. Poore. The jury would necessarily have heard evidence and argument resolving the crossclaim between he and Mr. Fansler regardless of Mr. Fansler's active participation. Mr. Poore's motion for a new trial is appropriately denied on this ground as well.

## MR. SIMMONS' MOTION FOR COSTS

Next, Mr. Simmons seeks $4,417.70 in costs as the prevailing party. Superior Court Civil Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party upon application to the Court." In addition to Rule 54, 10 *Del. C.* § 5101 provides that "[g]enerally, a party for whom final judgment in any civil action . . . is given in such action, shall recover, against the adverse party, costs of suit, to be awarded by the court." Although the Rule and the Statute are phrased in mandatory language, the Delaware Supreme Court has clarified that an award of costs is entrusted to the court's discretion.[16] Awardable costs are considered those that are "necessarily incurred in the assertion of [the party's] rights in court."[17] Here,

---

[16] *See Donovan v. Delaware Water & Air Res. Comm'n*, 358 A.2d 717, 723 (Del. 1976) (recognizing that "[t]he award of [Rule 54] costs is discretionary").

[17] *Id.* (quoting *Peyton v. William Peyton Corp.*, 8 A.2d 89, 91 (Del. 1939)); *see also Dewey Beach Lions Club v. Longacre*, 2006 WL 2987052, at *1 (Del. Ch. Oct. 11, 2006) (awarding $994.90 in File&Serve fees under Court of Chancery Rule 54(d) because "[a] party cannot litigate a case without incurring these costs").

8

Mr. Poore does not contest some of the costs sought. Those items include the service fee, e-filing costs, Dr. Malone's expert testimony fee, and the videographer fee for his testimony, which total $3,691.25.

Mr. Poore objects to three items, however, including (1) the costs paid for Mr. Poore's medical expert's deposition transcript, (2) one-half of the mediation fee, and (3) lay witness Jeff Mentzer's travel and attendance expenses.

First, Mr. Poore correctly opposes an award of costs for Dr. Rushton's transcript expense. Superior Court Civil Rule 54(f) provides, in relevant part, that deposition transcript fees "shall not be taxable unless introduced into evidence."[18] Here, Dr. Rushton testified by video recording—the transcript of his testimony was not introduced as evidence at trial by Mr. Simmons. A deposition transcript used for impeachment purposes in a video trial deposition or to highlight testimony for the jury in argument does not circumvent Rule 54(f) if it is not entered into evidence. Accordingly, cost recovery for this expense is denied.

Second, Mr. Simmons' portion of the mediator's fee is not recoverable. Generally, litigants are expected to bear mediation fees equally.[19] Delaware courts do not tax a prevailing party's portion of a mediator's fee as trial costs unless there was some abuse of the process by the non-prevailing party.[20] In this case, Mr. Simmons does not substantiate his contention that Mr. Poore failed to mediate in good faith. His request for recovery of his portion of the mediation costs is also denied.

---

[18] Super. Ct. Civ. R. 54(f).
[19] *See Lierenz v. McCall*, 2015 WL 1733634, at *1 (Del. Super. Apr. 10, 2015) ("Traditionally, parties split mediators' fees, and Delaware Courts have been reluctant to disturb this practice.").
[20] *LCT Cap., LLC v. NGL Energy Partners LP*, 2023 WL 4102666, at *4 (Del. Super. June 20, 2023), *aff'd in part, rev'd in part, and remanded*, 319 A.3d 335, 2024 WL 2716005 (Del. 2024) (TABLE).

Third and finally, Jeff Mentzer testified as a lay witness. He laid the foundation for his company's dashcam video which Mr. Simmons relied upon heavily at trial. Rule 54(d) permits recovery of witness costs when they are separately authorized by statute.[21] In that way, Rule 54 permits recovery of fees for witnesses who provide expert testimony because 10 *Del. C.* § 8906 specifically authorizes them. Here, Mr. Simmons identifies no case law or statute justifying an award of witness fees for a lay witness. Accordingly, his request for these costs is also denied.

## MR. SIMMONS' MOTION FOR PREJUDGMENT INTEREST

Mr. Simmons seeks prejudgment interest under 6 *Del. C.* § 2301(d). Mr. Poore concedes that Mr. Simmons made a qualifying demand that triggers Mr. Poore's obligation to pay prejudgment interest that runs from the date of injury. Initially, the parties disagreed regarding the applicable rate. But, during the exchange of post-trial submissions, the parties stipulated that the applicable rate is 5.25%.[22] Applying the 5.25% rate from the day of the accident would result in $50,604.74 in prejudgment interest—a figure to which the parties also largely agree.[23]

Mr. Poore, however, does not agree that an award of the entirety of the $50,664.74 in interest is appropriate. Rather, he contends that the Court should suspend the accumulation of interest for a six-month period because Mr. Simmons delayed in bringing the matter to trial. Specifically, Mr. Simmons underwent

---

[21] Specifically, Rule 54(g) refers to "statutory witness fees." Title 10, Chapter 89 provides for taxation of expert witness costs in civil actions in the Superior Court. *See* 10 *Del. C.* § 8906 (providing that expert witness fees "shall be taxed as part of the costs").

[22] D.I. 122 at 2.

[23] Mr. Poore agreed that this figure represented the proper amount. Mr. Simmons, in his June 3, 2026, letter to the Court indicated that he and Mr. Poore agreed regarding this amount but then referenced the slightly greater amount of $50,662.17 in interest. Neither party provided support for their calculation and the burden fell on Mr. Simmons to do so. As a result, the Court considers the lesser amount appropriate.

emergency open heart surgery shortly before the first trial, which necessitated a trial continuance of approximately six months.

Trial courts have the discretion to remove time from the interest calculation when a party delays prosecuting his or her case.[24] Delaware courts have suspended prejudgment interest in cases when the delay is (1) without reason, (2) due to the party's intractableness, (3) the fault of a plaintiff or their attorney, or (4) caused by the plaintiff.[25] Although bad faith is not required, something more than mere delay is required to toll the accumulation of interest, however.[26]

In this case, the question distills to whether Mr. Simmons unreasonably prosecuted or unreasonably failed to prosecute his claim.[27] Mr. Simmons suffered a serious medical condition that necessitated the trial continuance. There is no support for the contention, however, that he took action to bring an emergency open heart surgery upon himself. Although one could argue that the delay was "caused by" Mr. Simmons in a literal sense, he made no conscious decision to delay his trial. Moreover, the length of the delay fell well short of what could be considered an "unreasonable" delay. The trial went forward approximately six months after his open-heart surgery. There is no basis under these circumstances to suspend the accumulation of prejudgment interest under Section 2301(d).[28]

---

[24] *LCT Cap., LLC*, 2023 WL 4102666, at *5.

[25] *Bishop v. Progressive Direct Ins. Co.*, 2019 WL 2009331, at *5 (Del. Super. May 3, 2019); *see also Getty Oil Co. v. Catalytic, Inc.*, 509 A.2d 1123, 1124–26 (Del. Super. 1986) (articulating same standard).

[26] *See LCT Cap., LLC*, 2023 WL 4102666, at *5 ("While there need be no bad faith on the plaintiff's part for purposes of attribution, the term intractableness, as used in *Getty Oil,* is as good as any to capture the nature of the delay necessary to attribute fault to a plaintiff.").

[27] *Id.*

[28] *See Halaszi v. Wal-Mart Stores East LP*, 2023 WL 2980454, at *4 (Del. Super. Apr. 13, 2023) (refusing to suspend accrual of prejudgment interest due to Covid-19 pandemic).

## CONCLUSION

For the aforementioned reasons, Mr. Poore's motion for remittitur or new trial is **DENIED.** Mr. Simmons motion for Rule 54 costs is **GRANTED-IN-PART** and **DENIED-IN-PART**, and his motion for prejudgment interest is **GRANTED**. Final judgment is hereby entered in the amount of $210,000, together with $3,691.25 in court costs, $50,604.74 in prejudgment interest, and post judgment interest running from the date of the jury's verdict until payment.

**IT IS SO ORDERED.**

Very truly yours,

/s/ Jeffrey J Clark
Resident Judge

*Via File&ServeExpress*

12